COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

DANIEL LEE ALFORD, III,                                )

                                                                              )              
No.  08-04-00025-CV

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )               
394th District Court

DOUG JOHNSTON,                                            )

                                                                              )         
of Culberson County, Texas

Appellee.                           )

                                                                              )                   (TC# 3982-394)

                                                                              )

 

 

O
P I N I O N

 

This is an appeal
from a suit for damages related to a holdover tenancy on a ranch in Culberson
County, Texas.  Through an assignment of
the ranch owner=s rights,
Appellee Doug Johnston, the current lessee of the ranch, sued former lessee
Appellant Daniel Lee Alford, III for pasturage damages resulting from Mr.
Alford=s
wrongful holdover on the ranch past the commencement date of Mr. Johnston=s lease.  Mr. Johnston also sought recovery for damages
to the ranch water system.  After a bench
trial, the trial court awarded no damages for replacement of the water system,
but did award Mr. Johnston pasturage damages of $2,984.23 and attorneys= fees through trial in the sum of
$2,000, in addition to awarding him contingent attorneys=
fees related to future appeals.  In four
issues, Mr. Alford contends that the trial court erred in its award of
pasturage damages and attorney=s
fees in this case.  We will affirm.








For approximately
eighteen years, Mr. Alford leased the 12,000 acre Allen Ranch just south of Van
Horn and ran cattle on it.  Mr. Alford
and Mr. Allen, the owner, had an oral grazing lease under which Mr. Alford was
to pay Mr. Allen at the end of each year based on the number of cattle grazed
on a monthly basis at the rate of $3 per cow, per month; $2 per yearling, per
month.  In addition, Mr. Alford did not
have to pay for any yearlings being held in the pens he constructed on the
ranch.  Mr. Alford did not pay Mr. Allen
any rent on the ranch for the year of 1996.

In May 1996, the
ranch was sold at auction to Mapleleaf Enterprises, a Houston, Texas company
whose principal owner is David Chu.  Mr.
Alford and Mr. Chu discussed the possibility of Mr. Alford continuing to lease
the ranch, but they were not able to negotiate a new lease.  By letter dated July 20, 1996, Mr. Chu
informed Mr. Alford that he had decided to lease the ranch to Mr. Johnston and
Mr. Jack Dees and that their lease would commence on October 1, 1996.  Mr. Chu requested that Mr. Alford vacate
the property by September 30.  In response
to the letter, Mr. Alford contacted Mr. Chu and asked for permission to stay on
the ranch from July to September 1996. 
Mr. Alford paid Mr. Chu $1,500 for the three months= use of the ranch at a rate of $2 per
head, per month.

Mr. Alford did not
leave the ranch by October 1, 1996 and at the time believed that he had the
right to stay on the ranch under his on-going one-year lease with the prior
owner.  Mr. Johnston filed a
forcible entry and detainer action against Mr. Alford in the justice court and
obtained a judgment in his favor.  Mr.
Alford filed an appeal of that judgment in the county court.








According to Mr.
Alford, through Mr. Johnston=s
attorney, the parties then reached an agreement in which Mr. Alford agreed to
drop the appeal in the county court and allow Mr. Johnston to start
putting his cows in the pastures, while Mr. Alford would be allowed to leave
his yearlings in the pens until they were ready to be moved.  However, Mr. Johnston testified that their
agreement was for Mr. Alford to vacate the ranch by the first of the year.  Mr. Johnston did not recollect any
mention of him being able to use the pastures prior to January 1 nor did
he recollect moving any cattle into the pastures during November and December
of 1996.  C. R. AKit@ Bramblett, Mr. Johnston=s attorney, testified that there was no
agreement that Mr. Alford would not be held liable for his use of the
ranch.  Rather, the only agreement was
that the appeal would be dropped and that Mr. Alford would vacate the ranch by
January 1, 1997.

Under the terms of
their lease, Mr. Johnston and Mr. Dees agreed to lease the ranch for $12,000 a
year, which amounted to about a dollar per acre in annual rent, which Mr.
Johnston testified was a reasonable rate in west Texas.  Mr. Johnston testified that under his lease,
he was entitled to move onto the ranch on October 1, 1996, however, for three
months past this commencement date he paid rent, but was not able to run his
cattle on the property. 
Mr. Johnston believed that the fair way to calculate the value of
Mr. Alford=s
pasturage was that it cost Mr. Johnston to lease the ranch, which was approximately
$1,000 per month.








When Mr. Johnston
later took possession of the ranch, he discovered that he was unable to pump
water into the dirt tank on the north end of the ranch.  Mr. Johnston incurred over $14,000 in
expenses to replace the missing components of the ranch=s
water system.  Mr. Alford testified that
when he moved on to the ranch in 1978, he purchased the water equipment to the
headquarters and the water equipment for the north end water well from a
previous tenant.  Over the course of many
years, Mr. Alford replaced the motor and the electrical boxes on the water well
numerous times.  When Mr. Alford left the
ranch, he removed the submersible motor, pump, pipe string, and electrical
boxes from the water well, and took these components because they belonged to
him.  Mr. Alford testified that these
components were not permanently affixed to the well casing or the real
property.

DAMAGES

Scope
of Review

No findings of
fact or conclusions of law were requested or filed in this case .  See Tex.R.Civ.P.
296, 299a.  Because the trial court did
not make findings of fact or conclusions of law, we must assume that it made
all findings in support of its judgment. 
Pharo v. Chambers County, Tex., 922 S.W.2d 945, 948 (Tex. 1996); Worford
v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990).  When a reporter=s
record is brought forward, as in this case, these implied findings may be
challenged by factual sufficiency and legal sufficiency points the same as jury
findings or a trial court=s
findings of fact.  Roberson v.
Robinson, 768 S.W.2d 280, 281 (Tex. 1989)(per curiam).  In determining whether some evidence supports
the judgment and the implied findings of fact, we consider only that evidence
most favorable to the issue and disregard entirely that which is opposed to it
or contradictory in its nature.  Worford,
801 S.W.2d at 109.  The judgment must be
affirmed if it can be upheld on any legal theory that finds support in the
evidence.  Id.  

Standard
of Review








A Ano evidence@
or legal insufficiency point is a question of law which challenges the legal
sufficiency of the evidence to support a particular fact-finding.  In re Estate of Livingston, 999 S.W.2d
874, 879 (Tex.App.--El Paso 1999, no pet.). 
There are two separate Ano
evidence@
claims.  In re Estate of Livingston,
999 S.W.2d at 879.  When the party having
the burden of proof suffers an unfavorable finding, the point of error
challenging the legal sufficiency of the evidence should be that the fact or
issue was established as Aa
matter of law.@  Id. 
When the party without the burden of proof suffers an unfavorable
finding, the challenge on appeal is one of Ano
evidence to support the finding.@  Id.; see Creative Manufacturing,
Inc. v. Unik, Inc., 726 S.W.2d 207, 210 (Tex.App.--Fort Worth 1987, writ
ref=d n.r.e.).  In reviewing a legal insufficiency or Ano evidence@
point, we consider only the evidence which tends to support the fact-findings
and disregard all evidence and inferences to the contrary.  Garza v. Alviar, 395 S.W.2d 821, 823
(Tex. 1965).  If more than a scintilla of
evidence exists to support the questioned finding, the Ano
evidence@ point
fails.  Id.; Tseo v. Midland
Am. Bank, 893 S.W.2d 23, 25 (Tex.App.--El Paso 1994, writ denied).

Pasturage
Damages 

First, Mr. Alford
argues that pursuant to the parties=
agreement in late November or early December of 1996, Mr. Johnston agreed to
allow Mr. Alford use of the pens on the ranch until year-end as consideration
for Mr. Alford agreeing to vacate the pastures and dismiss his appeal of the
forcible entry and detainer action. 
Therefore, Mr. Alford asserts, Mr. Johnston was not entitled to any
further compensation for possession of the ranch after October 1, 1996.  We must disagree.








At the bench
trial, Mr. Johnston testified that there was no agreement between the parties
regarding use of the pastures during the disputed period.  Mr. Bramblett also testified that there was
no agreement that Mr. Alford would not be liable for the time his client was
deprived use of the ranch.  Rather, the
extent of their arrangement was that Mr. Alford would vacate the ranch by
January 1, 1997 and that he would dismiss his appeal in the county court, which
had involved issuance of a bond.  This
evidence supports the trial court=s
implied finding that there was no subsequent agreement between the parties
concerning Mr. Alford=s
liability during the holdover period.[1]

Alternatively, Mr.
Alford argues that Mr. Johnston=s
pasturage damages should not exceed $2,000 because under their subsequent
agreement, Mr. Johnston was to use the pastures during the holdover
period.  According to Mr. Alford, Mr.
Johnston began to move his cattle onto the ranch by the end of November or early
December.  Mr. Alford asserts that at most,
he was liable to Mr. Johnston for two months=
rent at the fair rate of $1,000 per month or a total of $2,000.

As already
discussed, Mr. Johnston did not recall any agreement about him being able to
use the pastures during the holdover period nor did he recall moving any cattle
into the pastures during November and December. 
In fact, Mr. Johnston testified that he did not move any cattle onto the
ranch on October 1, 1996 and for the first three months of his lease he did not
get to run his cattle on the ranch.  This
evidence directly contradicts Mr. Alford=s
testimony and supports the trial court=s
implied finding that Mr. Johnston was deprived of use of the ranch for the
three-month period after October 1, 1996.








It was undisputed
at trial that Mr. Alford was a holdover tenant. 
There is also an implied finding that Mr. Alford remained in possession
of the leased ranch after the commencement date of Mr. Johnston=s lease of the same property.  As the landlord=s
assignee, Mr. Johnston sued to recover the rental value of the property during
the holdover period.  In an action for
damages for a lessee=s
wrongful holdover, the proper measure of damages is the reasonable market
rental value of the property during the holdover period.  See Downwind Aviation, Inc. v.
Orange County, 760 S.W.2d 336, 340 (Tex.App.--Beaumont 1988, writ denied); Standard
Container Corp. v. Dragon Realty, 683 S.W.2d 45, 48 (Tex.App.--Dallas 1984,
writ ref=d
n.r.e.).  Mr. Johnston testified
that the reasonable value of the pasturage during the holdover period was
roughly a thousand dollars a month.  Mr.
Johnston also testified that the ranch was just under 12,000 acres and that a
dollar an acre annual rent was a reasonable rate for rental on ranches in west
Texas.  It is undisputed that $1,000 was
a fair and reasonable monthly rate for lease of the ranch.  Therefore, there is evidence to support the
trial court=s award
of pasturage damages for the three-month holdover period in the amount of
$2,984.23.  Issues One and Two are
overruled.

ATTORNEY=S FEES

In his third
issue, Mr. Alford complains that the trial court erred in awarding
Mr. Johnston any attorneys=
fees because Mr. Johnston=s
demand for payment was excessive and therefore precludes any recovery of
attorney=s fees as
a matter of law.  In his fourth issue,
Mr. Alford argues in the alternative that Mr. Johnston failed to segregate
the attorney=s fees
attributable to his contract claim from those attributable to his claim for Adamage to the water system,@ which Mr. Alford asserts was clearly a
tort claim for conversion for which attorney=s
fees are not recoverable.








At trial, Mr.
Johnston=s
attorney, C. R. AKit@ Bramblett, testified that he was
licensed to practice law in January 1976 and based on the work he had done in
preparation for the lawsuit, in particular having to appear before the trial
court in over twelve pretrial and trial proceedings, he believed that $5,000
was a reasonable fee for his services. 
On cross-examination, Mr. Bramblett maintained that he considered $5,000
a reasonable attorney fee even if the maximum amount of recovery for the breach
of contract claim was $750 because A[i]t
would depend on how much work you had to do, how many times you had to go to
court, how [many] times the case was continued and the amount of work you did.@ 
Mr. Alford=s
attorney, Daniel Lee Alford, IV, testified that a $5,000 fee through trial was
not a reasonable fee because the bulk of the case was pleaded as a tort case,
for which attorney=s fees
are not recoverable.  The trial court=s final judgment awarded Mr. Johnston
$2,000 in attorney=s fees
for services rendered through trial.

Standard
of Review








Reasonable
attorney=s fees
are recoverable in a suit for breach of contract.  See Tex.Civ.Prac.&Rem.Code
Ann. '
38.001(8)(Vernon 1997).  The
determination of reasonable attorney=s
fees is a question for the trier of fact. 
Stewart Title Guaranty Co. v. Sterling, 822 S.W.2d 1, 12 (Tex.
1991).  The amount of a fee award rests
in the sound discretion of the trial court, and its judgment will not be
reversed on appeal absent a clear abuse of discretion.  Cordova v. Southwestern Bell Yellow Pages,
Inc., 148 S.W.3d 441, 445-46 (Tex.App.--El Paso 2004, no pet.).  Even though the appropriate standard of
review is abuse of discretion, we may nevertheless review a fee award for
sufficiency of the evidence.  Id.
at 446.  This hybrid analysis requires a
two‑pronged inquiry:  (1) Did the
trial court have sufficient information upon which to exercise its discretion;
and (2) if so, did the trial court err in its application of discretion?  Id.; see Lindsey v. Lindsey,
965 S.W.2d 589, 592 (Tex.App.‑‑El Paso 1998, no pet.).  The traditional sufficiency review comes into
play with regard to the first question.  Cordova,
148 S.W.3d at 446.  We then proceed to
the determine whether, based on the elicited evidence, the trial court made a
reasonable decision.  Cordova, 148
S.W.3d at 446.  Stated inversely, we must
conclude that the trial court=s
decision was neither arbitrary nor unreasonable.  Id.

Excessive
Demand








Mr. Alford argues
that Mr. Johnston=s demand
for payment of $16,000 in tort damages and $6,000 in pasturage damages was
excessive, and only approximately 13 percent of the sum he recovered in the
final judgment.  See Tex.Civ.Prac.&Rem.Code Ann. ' 38.002.  Relying on Findlay v. Cave, 611 S.W.2d
57 (Tex. 1981), Mr. Alford asserts that as a matter of law, Mr. Johnston
is precluded from recovering any attorney=s
fee because of his outrageous demand.  A
creditor who makes an excessive demand upon a debtor is not entitled to
attorney=s fees
for subsequent litigation required to recover the debt.  See Findlay, 611 S.W.2d at 58.  In Findlay, the amount of the attorney=s fees was not at issue.  Id. 
Rather, the question was whether any attorney=s
fees were allowable at all because the original demand for payment was
excessive as a matter of law, thereby discharging the debtor from any liability
for fees incurred in the litigation.  Id.
at 57, 58.  The Findlay Court
found that even though the demand was for an amount appreciably greater than
that which the jury later determined was actually due, the amount demanded was
based on the parties=
written contract and the debtor had made no attempt to tender the full amount
that the jury found to be actually due.  Id.
at 58.  Under those circumstances, the
court concluded that it could not find a sufficient level of unreasonableness
or bad faith to warrant finding excessive demand as a matter of law.  Here, there is no evidence that Mr. Johnston
refused to accept tender of the amount actually due or that Mr. Alford=s tender of the actual amount due would
have been refused and thus would have been futile.  See id. at 58.  By his demand letter, Mr. Johnston alleged
$16,000 for damages to the water system and $6,000 for pasturage on the
ranch.  While a demand that is greater
than the eventual judgment is some evidence of excessiveness, this fact is not
the sole criterion for determining whether the demand was excessive.  Findlay, 611 S.W.2d at 58.  The evidence supports the trial court=s implied finding that the demand was
not excessive.  Without any evidence of
unreasonableness or bad faith on the part of Mr. Johnston, we cannot conclude
that the demand was excessive as a matter of law.[2]  Accordingly, we overrule Issue Three

Segregation
of Fees

In his fourth
issue, Mr. Alford argues in the alternative that Mr. Johnston failed to
segregate the attorney=s
fees attributable to his contract claim from those attributable to his claim
for Adamage to
the water system,@ which
Mr. Alford asserts was clearly a tort claim for conversion for which attorney=s fees are not recoverable.








As a general rule,
the party seeking to recover attorney=s
fees carries the burden of proof and must show that the fees were incurred on a
claim that allows recovery of such fees and, thus, is ordinarily required to
segregate fees by claim when there are multiple claims which may or may not
allow the recovery of such fees.  See
Sterling, 822 S.W.2d at 10-11; Z.A.O., Inc. v. Yarbrough Drive Ctr. J.V.,
50 S.W.3d 531, 550‑51 (Tex.App.--El Paso 2001, no pet.).  There is a recognized exception to the duty
to segregate fees when the attorney=s
fees rendered are in connection with multiple claims arising out of the same
transaction.  Sterling, 822 S.W.2d
at 11.  Therefore, when the claims are
dependent upon the same set of facts or circumstances and thus are A>intertwined
to the point of being inseparable,=@ the party suing for attorney=s fees may recover the entire amount
covering all claims.@  Sterling, 822 S.W.2d at 11.  On appeal, Mr. Johnston does not contest
that his claim for damages to the ranch water system was a tort claim or that
the exception to fee segregation applies in this case.  Rather, Mr. Johnston argues that the trial
court, in fact, segregated the pasturage damage claim from the damage claim for
the ranch=s water
system by its implied finding that $2,000 was a reasonable attorney=s fee.








Here, Mr. Johnston=s attorney testified that the
reasonable fee for his services through trial was $5,000, noting the numerous
court appearances required during the litigation process.  Even if we were to agree with Mr. Alford=s contention that Mr. Johnston failed
to adequately segregate his attorney=s
fees, the award would still stand.  In
addition to the evidence presented, the trial court was entitled to take
judicial notice of the usual and customary attorney=s
fees for the services provided and the contents of the case file, even though
no request was made for the trial court to do so and the trial court did
formally announce that it had done so.  See
Tex.Civ.Prac.&Rem.Code Ann. ' 38.004; Cap Rock Electric
Cooperative., Inc. v. Texas Utilities Electric Co., 874 S.W.2d 92, 101
(Tex.App--El Paso 1994, no writ); Ho v. Wolfe, 688 S.W.2d 693, 697
(Tex.App.‑‑Amarillo 1985, no writ); Holsworth v. Czeschin,
632 S.W.2d 643, 645 (Tex.App.‑‑Corpus Christi 1982, no writ).  Moreover, an appellate court when reviewing
the judgment of the trial court may presume that the trial court did take such
judicial notice.  Purvis Oil Corp. v.
Hillin, 890 S.W.2d 931, 939 (Tex.App.--El Paso 1994, no writ), citing
Holsworth, 632 S.W.2d at 645. 
Thus, the trial court did have sufficient information upon which to
determine the usual and customary attorney=s
fees for the contract claim at issue. 
The usual and customary attorney=s
fees are presumed to be reasonable.  See
Tex.Civ.Prac. & Rem.Code Ann.
' 38.003.  The trial court=s
decision was neither arbitrary nor unreasonable, therefore it did not err in
applying its discretion in awarding reasonable attorney=s
fees in the amount of $2,000 for services rendered through trial.  Issue Four is overruled.

We affirm the
trial court=s judgment.  

 

 

July
21, 2005

DAVID WELLINGTON
CHEW, Justice

 

Before Barajas, C.J., McClure, and Chew, JJ.











[1]
Further, at the bench trial, Mr. Alford=s
counsel conceded that Mr. Alford was a holdover tenant, but disputed the amount
of money he owed to Mr. Johnston for the pasturage.





[2]
Mr. Alford also cites to Wuagneux Builders, Inc. v. Candlewood Builders,
Inc., 651 S.W.2d 919 (Tex.App.--Fort Worth, 1983, no writ), in support of
his claim of excessive demand.  However, Wuagneux
Builders, Inc. is not on point because the issue in that case was whether
there was an excessive award of attorney=s
fees by the jury, not whether the plaintiff made an excessive demand for
payment which precludes recovery of the attorney=s
fees awarded.  See Wuagneux Builders,
Inc., 651 S.W.2d at 922.