COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





BROWNHAWK, L.P.,

                            Appellant,

v.


MONTERREY HOMES, INC.,

                            Appellee.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-08-00190-CV

Appeal from the

 448th Judicial District Court

of El Paso County, Texas 

(TC# 2007-4136) 





O P I N I O N

            Brownhawk, L.P. (“Brownhawk) appeals a breach of contract judgment in favor of
Monterrey Homes, Inc. (Monterrey”) in the amount of $225,000, plus pre-judgment interest and
attorney’s fees. In three issues, Brownhawk challenges the trial court’s findings of fact and
conclusions of law and its attorney’s fees award.
            In September 2007, Brownhawk, a real estate developer, and Monterrey, a residential
construction company, entered into an agreement for Monterrey to purchase an unimproved tract
of land in El Paso County for development of the “Dos Palmas” subdivision. The parties signed
an earnest money contract for the property on September 21, 2006 (“the contract”). Monterrey
agreed to pay $2,250,000 for the property, and Brownhawk agreed to convey the property to
Monterrey including certain improvements which were to be completed by Brownhawk, in a
“good workman-like manner” on or before May 31, 2007. The improvements were specified as
follows: (1) Brownhawk would complete all earthwork and grading, as specified by the
subdivision plan; (2) install all sidewalks, streets with curbs, and gutters; and (3) install all
utilities as appropriate for a residential subdivision.
            The contract contained a general termination or “default” provision which provided each
party with the right to terminate the contract, seek specific performance, or seek other remedies
as provided by law, for breach by the other party. In a separate section, the contract also gave
Monterrey the right to terminate the contract and receive a full refund of the earnest money if
Brownhawk failed to complete the improvements by the date specified. The contract also
provided for the recovery of attorney’s fees for the prevailing party should a default lead to
litigation.
            Final closing on the improved property was scheduled to take place “on or before 15 days
after completion of development.” Upon signing the agreement, Monterrey immediately
deposited $25,000 into an escrow account. Later, in accordance with the contract, Monterrey
deposited another $200,000 into escrow after the City of El Paso approved the preliminary
subdivision plat. Over the next few months, the parties negotiated numerous changes to the
configuration of the subdivision plat which required re-submission of the amended subdivision
plat for the city’s approval. The city approved the change, but required the parties to install a
“drainage flume” to accommodate the reduction.
            With the newly approved subdivision plans approved, the parties signed an amendment to
the contract to further specify their responsibilities prior to closing. The amendment, signed
April 30, 2007, changed the property description to reference the updated subdivision plans
approved by the city, and made several changes to the closing provisions. First, the amendment
extended Brownhawk’s deadline for its initial construction obligations to May 30, 2007, with an
automatic forty-five day extension if Brownhawk was unable to meet the amended deadline. The
amendment specified that closing would take place within fifteen days of “Completion of
Development” and further specified that “Completion of Development” would occur when
Brownhawk completed the following: (1) all earthwork and grading as required by the
Developer/Builder plan (attached to the amendment as Exhibit A); (2) all streets with curbs and
gutters and all sidewalks shown on the Developer/Builder Plan as “By Developer;” (3) all
utilities for a residential subdivision as specified by the Developer/Builder Plan; and (4) all “By
Developer” retaining walls according to the Developer/Builder Plan. Monterrey, in turn, took
responsibility for construction of all rock or retaining walls between lots, all rock or retaining
walls noted as “By Builder” on the Developer/Builder Plan, and construction of sidewalks along
Dos Palmas Drive, also specified as “By Builder.” Monterrey agreed it was responsible for
completing the “Builder’s Improvements” even if they were not completed by closing, and
further agreed that closing would not be delayed in any way by its failure to complete those
improvements. Finally, the amendment provides an additional termination provision for
Monterrey. In the event Brownhawk was unable to complete its improvements by the extended
completion date, Monterrey could terminate the contract by written notice to Brownhawk, or
negotiate another extension. If Monterrey chose to terminate the contract, it was entitled to a
refund of any remaining escrow funds, subject only to Monterrey’s decision to exercise its right
to purchase certain lots prior to closing (Monterrey’s “Early Purchase Right”). The amendment
does not specifically reference the drainage flume construction.
            The parties never closed on the property. On September 12, 2007, Brownhawk filed suit
against Monterrey for breach of contract, alleging that despite the completion of “virtually all” of
its own construction obligations, Monterrey failed to complete construction of the “By Builder”
projects, and prevented Brownhawk from securing a final inspection from the City of El Paso. 
Monterrey counter-claimed with its own breach of contract claim, alleging that Brownhawk
failed to meet the extended completion deadline provided by the contract amendment, and that it
had exercised its right to terminate the agreement by written notice sent to Brownhawk on
August 16, 2007.
            The case was tried to the bench beginning on April 21, 2008. On April 30, 2008, at the
close of evidence, the trial court ruled in favor of Monterrey on its counterclaim and awarded
$225,000 plus interest and attorney’s fees. The trial court also awarded Monterrey $49,450 for
attorney’s fees, with additional contingent awards in the event of Brownhawk’s unsuccessful
appeals to this Court and the Texas Supreme Court. Following entry of the judgment, the court
entered findings of fact and conclusions of law.
            The following findings are key to the disposition of this appeal:
5.Time was of the essence under the Contract.
 
6.[Pursuant to the Amendment] . . . Brownhawk was required to complete
all the enumerated improvements no later than August 14, 2007 if the
automatic extension was utilized. Time was again of the essence pursuant
to the Contract Amendment.

. . .
 
8.[As of August 16, 2007] Brownhawk had not completed all the earth work
and grading, nor had Brownhawk completed all the sidewalks, curbs and
gutters.

. . .
 
10.[O]n August 14, 2007 the subdivision could not have passed final
inspection and would not have been accepted by the City of El Paso.

. . .
 
13.In a letter dated August 16, 2007, Monterrey sent notice to Brownhawk
electing to terminate the Contract. As part of the notice Monterrey
demanded that Brownhawk release the escrowed amount of $225,000. . . . 
Brownhawk refused.
 
14.Brownhawk alleged that pursuant to revised plans that were filed with the
City that Monterrey was supposed to construct a flume for drainage prior
to the subdivision final inspection. Such revisions to the plan, however,
were added after the plans to the Amendment were signed and without
Monterrey’s permission or knowledge. When confronted with this
revision, a representative of Brownhawk agreed that Brownhawk would
follow the original plans attached to the Amendment.
 
15.Brownhawk breached the Contract when it failed to return the escrow
money to Monterrey.
 
16.Monterrey did not breach the contract.

            Brownhawk has appealed the court’s judgment, and in its first two issues presented to this
Court, Brownhawk challenges the legal and factual sufficiency of the evidence supporting
findings fourteen, fifteen, and sixteen.


 In its third issue on appeal, Brownhawk challenges the
legal and factual sufficiency of the trial court’s attorney’s fees award. We will address Issue Two
first.
            Brownhawk presents Issue Two as a challenge to the legal and factual sufficiency of the
evidence supporting the trial court’s fifteenth and sixteenth findings, i.e., that Brownhawk did
breach the contract, and that Monterrey did not. Brownhawk contends that Monterrey’s failure to
construct the “by builder” improvements, including the “drainage flume” constituted a material
breach of the contract, thereby excusing Brownhawk’s failure to complete its performance. 
Brownhawk concludes, therefore, that the evidence is legally and factually insufficient to support
the trial court’s finding that it breached the agreement, and Monterrey did not.


 Because the
record demonstrates that the operative material breach was Brownhawk’s failure to complete its
construction obligations by the extended completion deadline provided by the contract
amendment, we disagree.
            A trial court’s findings of fact are reviewable for legal and factual sufficiency under the
same standards of review used to review the sufficiency of the evidence supporting a jury’s
findings. Anderson v. City of Seven Points, 806 S.W.2d 791, 794 (Tex. 1991). The standard and
scope of review applicable to a particular sufficiency challenge depends on whether or not the
appellant bore the burden of proof for the challenged issue at trial. See Quick v. Plastic Solutions
of Texas, Inc., 270 S.W.3d 173, 181 (Tex.App.--El Paso, no pet.). Regardless of a party’s
designation of a sufficiency point, we are required to review each attack in its proper context. 
O’Neil v. Mack Trucks, Inc., 542 S.W.2d 112, 113-14 (Tex. 1976).
            Brownhawk’s attack on finding sixteen (Monterrey did not breach), represents an attack
on a finding for which Brownhawk had the burden of proof at trial. See Abraxas Petroleum
Corp. v. Hornburg, 20 S.W.3d 741, 758 (Tex.App.--El Paso 2000, no pet.)(noting the non-claimant’s breach is an essential element of a breach of contract cause of action). We will review
the sufficiency of the evidence supporting finding sixteen under the “matter of law” and “against
the great weight and preponderance” standards. See Raw Hide Oil & Gas, Inc. v. Maxus
Exploration Co., 766 S.W.2d 264, 275-76 (Tex.App.--Amarillo 1988, writ denied). To sustain a
“matter of law” challenge, the reviewing court must conclude both that there is no evidence to
support the adverse finding and that the contrary proposition is established as a matter of law. 
See Marrs & Smith P’ship v. D.K. Boyd Oil & Gas Co., Inc., 223 S.W.3d 1, 13-4 (Tex.App.--El Paso 2005, pet. denied). A matter of law point will only be sustained if both analytical steps
are satisfied. Id.
            When a party with the burden of proof challenges the factual sufficiency of an adverse
finding, the appropriate complaint is that the finding is “against the great weight and
preponderance of the evidence.” Tate v. Tate, 55 S.W.3d 1, 5 (Tex.App.--El Paso 2000, no pet.). 
Such a challenge will be sustained only if the reviewing court concludes the non-finding is
against the great weight and preponderance of the evidence. Ames v. Ames, 776 S.W.2d 154, 158
(Tex. 1989). The fact finder’s determination should be upheld if there is some probative
evidence to support it, and the contrary evidence does not outweigh the supporting evidence to
such a degree that the finding “shocks the conscious,” or constitutes a manifest injustice. See
Kimsey v. Kimsey, 965 S.W.2d 690, 699-700 (Tex.App.--El Paso 1998, pet. denied). The
reviewing court will consider and weigh all the evidence, and must remain mindful of the
deference owed to the fact finder’s resolution of issues related to the weight and credibility
attributed to witness testimony. See Tate, 55 S.W.3d at 5; Marrs & Smith P’ship, 223 S.W.3d at
14.
            With respect to finding number fifteen (Brownhawk breached), Issue Two raises a “no
evidence” legal sufficiency challenge, and an “insufficient evidence” factual sufficiency
challenge. See Raw Hide Oil & Gas, 766 S.W.2d at 275-76. Under the “no evidence” standard
the court’s review is generally limited to the evidence and inferences in support of the finding,
and is conducted in the light most favorable to the finding. See Kimsey, 965 S.W.2d at 699-700. 
Such a challenge will be sustained only if the reviewing court concludes there is no more than a
“mere scintilla” of evidence to support the finding. See id. at 700. An “insufficient evidence”
challenge will be sustained only if the supporting evidence is so weak that the finding is clearly
wrong and manifestly unjust. See Rawhide Oil & Gas, 766 S.W.2d at 276. The scope of review
includes all the evidence, both in favor of and contrary to the finding. Kimsey, 965 S.W.2d at
700.
            Based on its singular argument that Monterrey materially breached the contract by failing
to complete its construction projects, Brownhawk concludes its own breach was excused, and
that findings fifteen and sixteen are without evidentiary support. In essence, this argument is an
attack on the trial court’s interpretation of the parties obligations under the contract and the
amendment. As such, the language of the instruments themselves will be the central focus of our
analysis. See Mustang Pipeline Co. Inc. v. Driver Pipeline Co., Inc., 134 S.W.3d 195, 199-200
(Tex. 2004).
            When a contracting party fails to perform a material obligation, the other party’s
subsequent failure to perform is excused. See Driver Pipeline Co., Inc., 134 S.W.3d at 199-200. 
In breach of contract disputes involving breach on both sides of an agreement, the fact finder
must often determine not only whether the parties breached their agreement, but also who
breached first. See Driver Pipeline Co., Inc., 134 S.W.2d at 199-200 (in cases where both parties
are in breach of their agreement, the proper inquiry is not whether each party materially breached
the agreement, but which material breach occurred first). This is because the chronology of the
material breaches determines which party is released from its obligations, and which party is
liable for contract damages. See id.
            The terms of the original contract defined three separate dates defining the parties’
performance. First, the contract required the “closing date” to take place on or before fifteen
days after the completion of development. The closing date was only to take place after
Brownhawk completed the improvements specified in the “Special Provisions” paragraph. In
turn, the parties originally agreed the “completion date” for those improvements was May, 31,
2007. There is no dispute that Brownhawk did not meet the first completion date. The parties
then agreed, by amendment, to extend Brownhawk’s completion deadline to June 30, 2007, and
included an additional automatic extension to August 14, 2007. Again the parties agreed that
closing was dependant on completion of development, and completion of development was
defined as completion of Brownhawk’s improvements. Monterrey was given the option to
terminate the agreement if Brownhawk was not able to complete the improvements by the
amended completion deadline.
            Monterrey attempted to exercise its right to terminate the contract on August 16, 2007. 
According to the contract terms, Brownhawk was obligated to return Monterrey’s earnest money
at that point if it had not completed its improvements. It is important to note that Brownhawk
does not contend that the evidence establishes its full performance at the time of the attempted
termination. Instead, Brownhawk argues that its obligation to return the escrow deposits was
excused because Monterrey had not constructed its “By Builder” improvements. However, as
discussed above, the contract specified that Monterrey’s improvements were due, not by the
“completion deadline” but by the closing date. To the extent Monterrey was obligated to
complete the builder improvements, and assuming for the sake of argument that Monterrey was
required to complete the drainage fume, Monterrey had another fifteen days before it breached
the contract.
            In sum, Brownhawk’s materially failed to perform in response to Monterrey’s termination
request at a time when Monterrey had yet to commit a material breach. Therefore, Brownhawk’s
breach was not excused by Monterrey’s non-performance. See Driver Pipeline Co., Inc., 134
S.W.2d at 199-200. The evidence was not legally or factually insufficient to support findings
fifteen and sixteen. Issue Two is overruled.
            In Issue One, Brownhawk challenges finding of fact and conclusion of law number
fourteen, in which the trial court made several determinations. To paraphrase, the court
concluded: (1) Brownhawk alleged that Monterrey was obligated to construct a drainage flume
prior to final inspection of the subdivision pursuant to revised plans which were filed with the
city; (2) the drainage flume revisions were added to the subdivision plan after the contract
amendment was signed; (3) the revisions were made without Monterrey’s knowledge; and (4)
Brownhawk agreed that it would follow the plans as they existed when the amendment was
signed. Brownhawk concludes that because the subdivision plans attached to the amendment
required Monterrey to construct its improvements in compliance with applicable building codes
and ordinances, and because the City of El Paso requires all drainage structures to be completed
before final inspection, the evidence was legally and factually insufficient to support finding
fourteen. We disagree.
            Given our analysis of the relationship between the contract terms and the chronology of
the parties’ respective breaches in Issue Two, even if we were to assume for the sake of argument
that the evidence was legally and factually insufficient to support these findings, Brownhawk
fails to explain how such a conclusion could serve as a basis for reversal. Accordingly, Issue
One is also overruled.
            In Issue Three, Brownhawk contends the evidence is legally and factually insufficient to
support the trial court’s attorney’s fees award. Brownhawk argues that because the record does
not contain evidence to support the court’s decision to award $49,450 in fees, the trial court
abused its discretion by entering judgment on that amount. Generally, the amount of money
awarded as attorney’s fees rests within the sound discretion of the court. Ragsdale v. Progressive
Voters League, 801 S.W.2d 880, 881 (Tex. 1990). However, to determine whether the award
constituted an abuse of discretion, the reviewing court must first determine whether the trial
court had sufficient evidence before it upon which it could exercise its discretion. See Alford v.
Johnston, 224 S.W.3d 291, 298 (Tex.App.--El Paso 2005, pet. denied). An award which is not
supported by evidence is arbitrary and constitutes an abuse of discretion. See F-Star Socorro.
L.P. v. City of El Paso, 281 S.W.3d 103, 106 (Tex.App.--El Paso 2008, no pet.). The party
seeking attorney’s fees bears the burden to put forth evidence regarding its right to recover such
damages, as well as the reasonableness and necessity of the amount of the fee. See Manon v.
Tejas Toyota, Inc., 162 S.W.3d 743, 751 (Tex.App.--Houston [14th Dist.] 2005, no pet.).
            The trial court considered the issue of attorney’s fees after the conclusion of the trial on
the merits. Brownhawk argues the appellate record is devoid of evidence to support the court’s
award. However, by supplemental clerk’s record Monterrey has made an affidavit by its attorney
part of the appellate record, and asks this Court to consider the affidavit as evidence supporting
court’s award. Monterrey represents the affidavit was presented to the trial court prior to entry of
judgment, but was mistakenly omitted from the record until May 2009. The affidavit indicates it
was sworn to on May 6, 2008, and the attached certificate of service states it was sent to
Brownhawk’s counsel in May 2008. The supplement also contains a letter from Monterrey’s
attorney to the trial court judge dated May 6, 2008, indicating Monterrey’s attorney’s fee
affidavit was enclosed with the letter. The original clerk’s record provides further support for
Monterrey’s position in the form of Brownhawk’s objections to Monterrey’s “Request For
Attorneys’ Fees,” which was supported by an affidavit by Brownhawk’s attorney. The response
and attached affidavit are file stamped May 21, 2008. Based on the supplemental clerk’s record,
and Brownhawk’s responsive filings contained in the original clerk’s record, we conclude
Monterrey’s attorney’s fee affidavit was before the court when it entered its judgment on May 22,
2008, and may be considered as evidence in support of the award.
            The affidavit itself provides Mr. Johnston’s qualifications and experience as a litigator in
El Paso, states his hourly rate for the case was $225, and concludes that this is a reasonable rate
in El Paso for the legal services he provided. The affidavit includes a summary delineating the
number of hours spent in each phase of the litigation, as well as an estimation of the number of
hours which would be required should the case be appealed. According to the summary,
Mr. Johnston spent 217 hours in preparation for trial, which multiplied by his stated hourly rate
represented $47,200 of the requested fee. The summary also states he spent ten hours related to
post-trial matters in the trial court, and requests an additional $2,250 for those efforts. In the
event of an appeal to this Court, Mr. Johnston anticipated seventy-five hours would be necessary
to prosecute the appeal, and requested a contingent award of $16,875. Similar contingency
awards were requested in the event a petition for discretionary review was filed in the Texas
Supreme Court, and in the event that petition was granted. Brownhawk objected to the affidavit
only on the basis that approximation of hours needed to pursue an appeal was too high.
            Based on this record, we conclude the trial court’s award was supported by sufficient
evidence, and that the court did not abuse its discretion in making the award. Issue Three is
overruled.
            Having overruled all of Appellant’s issues, we affirm the trial court’s judgment.


October 27, 2010
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, J., and Bramblett, Judge
Bramblett, Judge (Sitting by Assignment)