COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| NESTOR MENDOZA, JR., | § | No. 08-17-00117-CV |
| Appellant, | § | Appeal from the |
| v. | § | County Court |
| ANNIE MARIE BAZAN, | § | of Hudspeth County, Texas |
| Appellee. | § | (TC# CV-570) |
| | § | |

**O P I N I O N**

Nestor Mendoza Jr. appeals a judgment of eviction and monetary award of unpaid rent following a forcible detainer suit by Annie Marie Bazan.   Mendoza raises eight issues challenging not only the subject-matter jurisdiction of the courts below, but also the judgment of possession and unpaid rent.   We affirm.

**BACKGROUND**

In 2003, Annie Bazan (Bazan) and her former husband, Eric Bazan,[1] contracted to buy a home located at 700 and 704 Sierra Blanca Avenue in Sierra Blanca, Texas, (the property), from the Sierra Blanca Community Development Corporation (CDC), a non-profit corporation.

---

[1] According to a letter from Bazan's attorney, Bazan's former husband, Eric Bazan, granted all his interest in the property to Bazan.

Although the parties signed a sales contract, the record suggests no closing on the sale ever took place. According to Bazan's later testimony and a letter from her attorney, Bazan nevertheless made ongoing payments to the Bank of Sierra Blanca to purchase the property, and she lived there for some years. At some point, the Bank of Sierra Blanca informed Bazan that it could no longer accept payments and it later "folded." For a time, Bazan's original note was transferred to Trans Pecos Bank, but soon, this bank also refused to accept payments from her. While it is unclear exactly what occurred, the record contains references to the temporary dissolution of the CDC and its "reinstate[ment]" at some point around this time period.

In 2007, Bazan leased the property to Denise and Nestor Mendoza. Although Nestor Mendoza (Mendoza) himself did not sign the lease, both he and Denise were listed as prospective lessees on the agreement which contained Denise's signature. Two years later, in 2009, Bazan and the couple entered a second lease for a one-year term that required a monthly rent in the amount of $500. In the event of default, the lease provided for remedies including "any other recovery to which Landlord is entitled by law or in equity." As before, Denise signed the lease agreement, but Mendoza's signature is not present.

According to both parties, the Mendozas occupied the property during the term of the 2009 lease and paid rent consistent with the terms of that agreement up until early 2010. The record suggests that on or about April 20, 2010, Bazan sent a letter of eviction addressed to Denise and Nestor Mendoza. The record also contains a letter from Bazan's attorney addressed to the Mendozas' attorney. This letter informed the Mendozas they were delinquent in rental payments. It also warned that if they did not bring their payments current, Bazan would file a suit for forcible detainer and entry. Bazan then received a letter from an attorney who identified himself as

2

representing both Denise and Nestor Mendoza. The letter claimed that Bazan did not hold legal title to the property and alleged that Bazan had engaged in fraudulent conduct by accepting their rent payments. In response, Bazan's attorney sent a letter to the Mendozas demanding that rent be paid or they would face eviction by forcible entry and detainer.[2]

In 2010, when the Mendozas neither vacated the premises nor made rental payments, Bazan instituted her first forcible entry and detainer suit against them. In this suit, the justice court entered a take-nothing judgment against Bazan for reasons that are not clear from the record, and she was unsuccessful in overturning the judgment following a direct appeal and subsequent bill of review filed with the county court. In January 2015, the Mendozas signed and recorded a "Homestead Designation and Adverse Possession Affidavit." In December 2015, the CDC issued Bazan a warranty deed for the property after the CDC's reinstatement, which was signed by the Director of the CDC.

In June 2016, Bazan filed her second forcible detainer action against the Mendozas, contending they were wrongfully occupying the property. Bazan asked the justice court to restore possession of the property to her and to award damages for unpaid rent and attorney's fees. The justice court rendered judgment restoring possession of the property to Bazan, damages for unpaid rent totaling $10,000, prejudgment interest, and court costs. The Mendozas filed an appeal in the County Court of Hudspeth County, which conducted a trial *de novo*. During the trial, Bazan testified that she was not aware of Mendoza paying taxes on the property, but instead claimed that she herself had paid them. On direct examination, Mendoza acknowledged through his testimony

---

[2] A tenant commits forcible detainer by refusing to surrender possession of real property after the landlord has lawfully terminated the tenant's right to possession. *See* TEX. PROP. CODE ANN. § 24.002(a).

3

that he did not ever acquire a deed to the property, but nonetheless, he claimed he also paid taxes on the property. Mendoza also admitted he received notice to vacate the property before the proceeding.

After taking the case under advisement, the county court entered the same judgment as the justice court. Nestor Mendoza then filed this appeal of the county court's ruling against him.

## DISCUSSION

Mendoza raises eight issues on appeal, arguing that (1) the lower courts did not have jurisdiction over the forcible detainer suit because the amount in controversy totaled $10,000 in damages, plus attorney's fees, which exceeds the maximum amount in controversy permitted in a suit filed in those courts; (2) the lower courts lacked subject-matter jurisdiction over the suit because no landlord-tenant relationship existed between the parties, and because other disputed title issues were intertwined with the right of possession issue; (3) the trial court erred by considering Bazan's warranty deed and testimony because the deed did not exist at the time Mendoza breached the lease agreement; (4) Bazan's award for $10,000 in unpaid rent should be vacated because the two-year statute of limitations period for bringing a forcible detainer action for unpaid rent had expired; (5) the evidence was factually and legally insufficient to support Bazan's award for unpaid rent because the lease agreement sued upon covered only a one-year lease term; (6) the trial court erred by not granting judgment in favor of Mendoza based on res judicata and collateral estoppel since Bazan's attorney admitted that the same forcible detainer suit involving the same lease agreement and real property had already been litigated by the same parties and was decided in Mendoza's favor; (7) the evidence was legally insufficient to support the award of unpaid rent because Mendoza was not a party to the lease agreement; and (8) the evidence was

4

legally insufficient to prove the statutory notice to vacate element of the forcible detainer suit because Bazan did not present evidence that three days' written notice was given to the Mendozas to vacate the property.

Several of Mendoza's issues implicate related inquiries. For brevity, we will consider like issues together.

### Jurisdiction of Lower Courts

*Amount in Controversy*

In his first issue, Mendoza argues that both the justice court and county court below lacked jurisdiction to hear the forcible detainer suit because the amount in controversy, when combined with the attorney's fees Bazan sought to recover in her pleadings, exceeded the statutory maximum amount in controversy permitted for those courts. Mendoza bases this contention on TEX. R. CIV. P. 500.3, which defines a "small claims case" as a suit with an amount in controversy not exceeding $10,000, including attorney's fees, and which further states that in an eviction case, a claim for rent may be joined if the amount of unpaid rent sought to be recovered is not more than $10,000, including attorney's fees. TEX. R. CIV. P. 500.3(a), (d).

Yet, as Bazan points out in her response, Rule 816 of the Rules of Civil Procedure also provides that the rules of procedure "shall not be construed to extend or limit the jurisdiction of the courts of the State of Texas[.]" TEX. R. CIV. P. 816. Instead, it is the province of the Legislature to define the jurisdiction of the justice courts, and to set the limit on the amount in controversy permitted in those cases. *See* TEX. CONST. art. V, § 19 (justice courts have "such other jurisdiction as may be provided by law"). Therefore, we must look beyond Rule 500.3 to determine whether the justice and county courts in this instance properly maintained jurisdiction

over Bazan's forcible detainer suit.

As determined by the Legislature, a justice court has jurisdiction over civil cases in which the amount of controversy is not more than $10,000, and more specifically, also has original jurisdiction over cases of forcible entry and detainer. TEX. GOV'T CODE ANN. § 27.031(a)(1), (2); *see also* TEX. CONST. art. V, § 19 (justice courts have "such other jurisdiction as may be provided by law"). In determining the amount in controversy, accrued interest and post-judgment attorney's fees are not normally considered. *Serrano v. Francis Properties I, Ltd.*, 411 S.W.3d 661, 664 (Tex. App.—El Paso 2013, pet. dism'd w.o.j.) (citing *Tarrant Restoration v. TX Arlington Oaks Apartments, Ltd.*, 225 S.W.3d 721, 726 (Tex. App.—Dallas 2007, pet. dism'd w.o.j.); *Crumpton v. Stevens*, 936 S.W.2d 473, 477 (Tex. App.—Fort Worth 1996, no writ)). Similarly, the appellate jurisdiction of a statutory county court is confined to the jurisdictional limits of the justice court, and a county court does not have appellate jurisdiction over cases originating in the justice court if the justice court did not initially have jurisdiction. *Serrano*, 411 S.W.3d at 664 (citing *Puentes v. Fannie Mae*, 350 S.W.3d 732, 738 (Tex. App.—El Paso 2011, pet. dism'd)). The existence of subject-matter jurisdiction is a question of law. *Id.* (citing *State Dept. of Highways and Public Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002)).

Here, Bazan pleaded damages in the amount of $10,000 for unpaid rent, plus attorney's fees and court costs. The justice and county courts awarded Bazan $10,000 in damages for the unpaid rent, plus prejudgment interest and court costs, but did not award attorney's fees. Since Bazan pleaded an amount in controversy within the jurisdictional limit of the justice court, and post-judgment attorney's fees are not considered in determining the amount in controversy, we hold that jurisdiction properly vested in both the justice court and county court, respectively. *See*

6

*id*.; *Tarrant Restoration*, 225 S.W.3d at 726; *Crumpton*, 936 S.W.2d at 477. Likewise, since justice courts also have original jurisdiction over cases of forcible entry and detainer, we hold that the justice court (and, by extension, the county court in the *de novo* trial below) had jurisdiction over Bazan's forcible detainer action for this reason as well. *See* TEX. GOV'T CODE ANN. § 27.031(a)(2) ("[a] justice court has original jurisdiction of . . . cases of forcible entry and detainer"); *see also* TEX. R. CIV. P. 509.8(a) (a decision of a justice court may be appealed to a statutory county court with jurisdiction over the case); *Padilla v. NCJ Dev., Inc*., 218 S.W.3d 811, 815 (Tex. App.— El Paso 2007, pet. dism'd w.o.j.); *Serrano*, 411 S.W.3d at 664; *Molinar v. Refaei*, No. 08-14- 00299-CV, 2016 WL 5121988, at *1 (Tex. App.—El Paso Sept. 21, 2016, pet. denied) (mem. op.) (forcible detainer judgments may be appealed to a county court for a *de novo* hearing on the issue of possession). Mendoza's first issue is overruled.

*Landlord-Tenant Relationship and Title*

In his second issue, Mendoza argues that the lower courts lacked subject-matter jurisdiction because no landlord-tenant relationship between him and Bazan existed at the time of the filing of Bazan's forcible detainer suit, and because other disputed title issues were "necessarily intertwined with the issue of who had the right of possession to the subject property."

In a forcible detainer suit, a court must determine the right to actual possession of the premises, but not the issue of who holds title to the premises. TEX. R. CIV. P. 510.3(e). It is well- settled that issues of title are not adjudicated in a detainer suit, and the only issue the court must decide is the right to immediate possession of the property. *Molinar*, 2016 WL 5121988, at *1 (citing *Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 785 (Tex. 2006)). Likewise, a county court hearing a *de novo* trial from a justice court can only review a justice

7

court's determination of the right to possession and may not review the issue of title. *Id.* (citing *Murray v. U.S. Bank Nat. Ass'n*, 411 S.W.3d 926, 929 (Tex. App.—El Paso 2013, no pet.)). This is so because a forcible detainer suit is meant to be a speedy, simple, and inexpensive means of determining the right to possession of the premises, and the complications inherent in the determination of title would frustrate the intended purposes of the cause of action. *See Mekeel v. U.S. Bank Nat. Ass'n*, 355 S.W.3d 349, 352-53 (Tex. App.—El Paso 2011, pet. dism'd); *Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.).

To prevail in a forcible detainer action, a plaintiff is not required to prove title, but is only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession. *Molinar*, 2016 WL 5121988, at *2 (citing *Rice*, 51 S.W.3d at 709). As such, in a forcible detainer case "[t]he mere existence of a title dispute does not deprive a justice court or county court at law of jurisdiction," and a justice court lacks jurisdiction only if "the right to immediate possession *necessarily* requires the resolution of a title dispute" such that the issues of title and possession are "necessarily intertwined." *Id.*, at *4 (emphasis added) (citing *Bruce v. Fed. Nat. Mortg. Ass'n*, 352 S.W.3d 891, 893 (Tex. App.—Dallas 2011, pet. denied)); *Dormady v. Dinero Land & Cattle Co., L.C.*, 61 S.W.3d 555, 558–59 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.). Thus, "a justice court is not deprived of jurisdiction merely by the existence of a title dispute; [instead], it is deprived of jurisdiction only if resolution of a title dispute is a prerequisite to determination of the right to immediate possession." *Yarbrough v. Household Fin. Corp. III*, 455 S.W.3d 277, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.)). Moreover, "[s]pecific evidence of a title dispute is required to raise an issue of a justice court's jurisdiction." *Padilla*, 218 S.W.3d at 815.

8

On appeal, Mendoza first argues that there was no landlord-tenant relationship between Bazan and himself because the original lease had expired at the time of the second detainer suit, and the absence of said relationship presented a title issue sufficient to divest the justice court of jurisdiction over the case. We disagree. A forcible detainer suit is the proper method of determining possession where, as here, a tenant holds over after the expiration of a lease without the consent of the owner. *See* TEX. PROP. CODE ANN. § 24.002(a)(1) ("[a] person who refuses to surrender possession of real property on demand commits a forcible detainer if the person . . . is a tenant or a subtenant willfully and without force holding over after the termination of the tenant's right of possession."). The record shows that Bazan acquired a deed to the property from the CDC in 2015, a fact Mendoza does not dispute. During the *de novo* trial in the county court, Mendoza did not dispute that he lacked a deed to the property; but rather, Mendoza agreed that his only possessory claim arose from his status as a "renter." Mendoza also admitted he had not paid rent since prior to the institution of the first forcible detainer suit in 2010, but nevertheless claimed that he had paid taxes on the property. It is also undisputed that Mendoza remained in possession of the property long after the cessation of the 2009 lease as he continued residing there at the time of the 2016 detainer suit.

Thus, as Bazan points out, the lower courts did not need to resolve a title dispute to decide whether Mendoza originally entered the property as a tenant pursuant to a residential lease, and thereafter held over by remaining in possession of the premises after the termination of the lease. As such, we hold that the lower courts were not deprived of jurisdiction based on whether a landlord-tenant relationship existed at the time the second forcible detainer suit was filed. *See* TEX. PROP. CODE ANN. § 24.002(a)(1); TEX. GOV'T CODE ANN. § 27.031(a)(2).

Mendoza next argues that Bazan acquired a fraudulent deed from the CDC. Based on this assertion, he argues the existing dispute over title deprived the lower courts of jurisdiction over the case. Mendoza contends there were a "multitude of title issues" which were "necessarily intertwined" with the issue of who held the superior right of possession over the subject property. As to title, Mendoza asserts that the CDC issued a fraudulent deed to Bazan in 2015. Mendoza further asserts that prior to 2015, Bazan lacked a deed or other evidence establishing her ownership over the subject property. Mendoza argues that Bazan's testimony did not comport with the contract for the sale of the property, and that the CDC's transfer of title to her was ineffective because the CDC had been defunct for more than three years before it was later reinstated. Finally, Mendoza contends that his claim for homestead designation and adverse possession of the property presented another title issue which deprived both courts below of jurisdiction over the case. We disagree.

This case is somewhat similar to the San Antonio court's resolution of a forcible detainer suit in *Dormady*, 61 S.W.3d at 558–59. There, the court held that the plaintiff-landlord established in the justice and county courts that (1) it was the owner of the property as shown by a deed; (2) the defendant-tenant was a tenant at sufferance; and (3) that because the lease had expired, the landlord had the superior right to immediate possession. *Id*. at 558. The court also rejected claims by the tenant that title and possession issues were necessarily intertwined so as to preclude jurisdiction, concluding that the cases relied upon by the defendant concerned issues of title only, and not of the right to immediate possession. *Id*. at 558–59.

Like the landlord in *Dormady*, Bazan presented evidence at trial showing that she and the CDC had contracted for the sale of the property, that she had acquired a deed to the property in

10

2015, that the Mendozas had not paid rent in years, and that they still occupied the property as tenants at sufferance, all of which supported her superior right to immediate possession of the premises. *See id.* In contrast, we disagree with Mendoza's claim that the unknown details of the transaction between Bazan and the CDC voided her deed or constituted specific evidence of a title dispute which deprived the lower courts of jurisdiction. *See Padilla*, 218 S.W.3d at 815.

Mendoza also argues that his claim of adverse possession to the subject property rendered the issues of title and possession necessarily intertwined so as to preclude the justice court from deciding the right to possession without deciding the issue of title, citing for that proposition *Gibson v. Dynegy Midstream Services, L.P.*, 138 S.W.3d 518, 523–24 (Tex. App.—Fort Worth 2004, no pet.). We find *Gibson* to be distinguishable because in that case, the tenant pleaded a colorable adverse possession claim for the property, including by alleging that it had been in possession of the property for longer than the statutory period. *See id.* In contrast, the Mendozas entered the property here as tenants in 2009, but Bazan later filed a forcible detainer action in 2016. Because it is undisputed that the Mendozas did not occupy the property for at least ten years, Mendoza's adverse possession claim was grounded in far less than the requisite ten-year period for possession, and neither did he claim in the lower courts to have title to the property on this basis, or in the form of a title instrument or homestead application. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.026(a) (for claimants without a title instrument to the subject property, a person must bring an adverse possession suit not later than ten years after the day the cause of action accrues). As such, we conclude that *Gibson* is distinguishable, and that Mendoza's adverse possession claim did not constitute specific evidence which rendered the issues of right of possession and title so intertwined as to render the justice court without jurisdiction over the

11

forcible detainer suit.   *See Padilla*, 218 S.W.3d at 815.

Because Mendoza did not raise a title issue necessarily intertwined with the issue of right of immediate possession, and the determination of the right to immediate possession did not necessarily require the justice court to resolve the question of title, we hold that the lower courts had jurisdiction over Bazan's forcible detainer suit.   *Molinar*, 2016 WL 5121988, at \*2, 4; *Dormady*, 61 S.W.3d at 558–59; *Yarbrough*, 455 S.W.3d at 280.   Mendoza's second issue is overruled.

### Judgment for Possession

*Trial Court's Consideration of 2015 Deed*

We next address Mendoza's issues pertaining to the judgment for possession.   In his third issue, Mendoza argues that the trial court erred by considering Bazan's 2015 deed and related testimony as proof of Bazan's title when the deed did not exist at the time of the purported breach of the lease agreement in 2009 or 2010, and when the deed was unrecorded at the time of the second forcible detainer suit.   Yet, as Bazan points out, the issue in a forcible detainer suit is not whether a lease has been breached, but rather who has the right to immediate possession of the subject property at the time of suit.   *See Puentes*, 350 S.W.3d at 738.   Mendoza cites to no authority stating that a person cannot lease property before a deed to the property is recorded, or that the relevant inquiry is whether the landlord had the superior right to possession during the existence of a lease.   As such, since the relevant inquiry is which party has the superior right to immediate possession of the property at the time of suit, we find Mendoza's argument to be without merit.   *See id*.; *Dormady*, 61 S.W.3d at 558–59.   Mendoza's third issue is overruled.

*Res Judicata and Collateral Estoppel*

12

In his sixth issue, Mendoza argues that because Bazan and Mendoza already litigated the issue of who had the superior right to possession in the 2010 forcible detainer suit, res judicata and collateral estoppel barred the second forcible detainer suit as a matter of law. Res judicata and collateral estoppel are affirmative defenses which bar the re-litigation of certain issues or cases between parties which have already been decided. *See Puentes*, 350 S.W.3d at 739; *Hill v. Heritage Res., Inc.*, 964 S.W.2d 89, 137 (Tex. App.—El Paso 1997, pet. denied). The burden is on the party asserting these defenses to plead and prove each defense's respective elements. *See Hill*, 964 S.W.2d at 137. A party successfully asserts a res judicata (or claim preclusion) defense by proving the following elements: (1) a final prior judgment on the merits by a court of competent jurisdiction; (2) the identity of the parties, or those in privity with them; and (3) a second action based on the same claims which were raised, or could have been raised, in the first action. *Puentes*, 350 S.W.3d at 739 (citing *Pagosa Oil & Gas, L.L.C. v. Marrs & Smith P'ship*, 323 S.W.3d 203, 215 (Tex. App.—El Paso 2010, pet. denied)). Likewise, a party successfully raises a collateral estoppel (or issue preclusion) defense by proving (1) the facts sought to be litigated in the second action were fully and fairly litigated in the prior action; (2) those facts were essential to the judgment in the first action; (3) the parties were cast as adversaries in the first action. *Croysdill v. Old Republic Ins. Co.*, 490 S.W.3d 287, 295 (Tex. App.—El Paso 2016, no pet.) (citing *Sysco Food Services, Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994)).

This Court has previously addressed res judicata raised in a forcible detainer action in *Puentes*, 350 S.W.3d at 734. There, a landlord filed a forcible detainer suit against tenants present on the landlord's property, but the trial court ultimately held in favor of the tenants. *Id*. at 734–35. The landlord later filed a second forcible detainer action, and the tenants responded that res

13

judicata barred the second action because the trial court had previously decided the issue in the first detainer suit. *Id*. at 735, 739. We rejected the tenants' res judicata argument, reasoning that while the two detainer suits were "seemingly identical," a forcible detainer action is "uniquely limited in time," and thus the issue of which party had the superior right to possession at the time of the second forcible detainer suit had not been previously decided in the first action. *Id*. at 738–39. As such, we concluded that since an award of possession on a particular date does not determine a party's possessory interests on a future date, the right to immediate possession at the time of the first detainer action was not implicated in the second action, and the third element of res judicata was therefore not met. *Id*.

We are faced with a practically identical situation here. Bazan filed her first forcible detainer suit in 2010, seeking to eject the Mendozas from the property. The justice court entered a judgment in favor of the Mendozas, which became final after Bazan's subsequent bill of review was denied in 2014. In 2016, Bazan filed the second forcible detainer suit, raising the same claim and seeking essentially the same remedy. At a first glance, these suits appear to be identical. Nevertheless, because the central issue in a forcible detainer suit is "who has the right to possession now," and not "who had the right of possession in the past," Bazan's second forcible detainer suit is a new and independent action to determine the right of possession at the time the suit was filed. *See id*. at 739. It was not a "re-litigation" of the same claims raised in the first action, and thus the third element required of a res judicata defense has not been satisfied. *See id*.

Likewise, we reach the same conclusion regarding Mendoza's collateral estoppel defense because the issue of right of possession in 2010, at the time Bazan filed the first forcible detainer suit, was not synonymous with Bazan's issue of the right to possession at the time of Bazan's

14

second forcible detainer suit in 2016. Thus, this case is not a re-litigation of the same issue decided in the previous action. *See id.*; *see also Croysdill*, 490 S.W.3d at 295. We therefore hold that Mendoza's res judicata and collateral estoppel defenses are without merit. Mendoza's sixth issue is overruled.

*Notice to Vacate*

In his eighth issue, Mendoza contends that there was legally insufficient evidence that Bazan gave proper notice to the Mendozas to vacate the property, which is required before a landlord may file a forcible detainer suit.

When an appellant brings a challenge against the legal sufficiency of the evidence supporting an adverse finding on which he or she did not have the burden of proof at trial, as is the case here, the appellant must demonstrate that there is no evidence to support the adverse finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 807–08 (Tex. 2005); *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983). We review the evidence in the light most favorable to the verdict, crediting favorable evidence if a reasonable fact finder could, and disregarding contrary evidence unless a reasonable fact finder could not. *City of Keller*, 168 S.W.3d at 807. "Our traditional legal sufficiency—or 'no evidence'—standard of review upholds a finding supported by '[a]nything more than a scintilla of evidence.'" *In re K.M.L.*, 443 S.W.3d 101, 112 (Tex. 2014) (quoting *Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). "However, if the evidence is so weak that it only creates a mere surmise or suspicion of its existence, it is regarded as no evidence." *Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys.*

15

*Landfill, Inc.*, 434 S.W.3d 142, 156 (Tex. 2014). Where, as here, the trial court did not file findings of fact or conclusions of law, we must imply the findings necessary to support the trial court's judgment. *Tseo v. Midland Am. Bank*, 893 S.W.2d 23, 25 (Tex. App.—El Paso 1994, writ denied) (citing *Roberson v. Robinson*, 768 S.W.2d 280, 281 (Tex. 1989)); *see also Secure Comm, Inc. v. Anderson*, 31 S.W.3d 428, 430 (Tex. App.—Austin 2000, no pet.).

A tenant commits forcible detainer by refusing to surrender possession of real property after the landlord has lawfully terminated the tenant's right to possession. TEX. PROP. CODE ANN. § 24.002(a). Under the Property Code, a landlord must give a holdover tenant at least three days' written notice to vacate the premises before the landlord may file a forcible detainer suit. TEX. PROP. CODE ANN. §§ 24.002(b), 24.005(a). Since forcible detainer is a statutory cause of action, a landlord must strictly comply with its requirements. *Kennedy v. Andover Place Apartments*, 203 S.W.3d 495, 497 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (citing *Perkins v. Group Life & Health Ins. Co.*, 49 S.W.3d 503, 506 (Tex. App.—Austin 2001, pet. denied)). Proper notice under Section 24.005(a) is an element of a forcible detainer action. *Fashakin v. Fed. Home Loan Mortg. Corp.*, No. 14-11-01079-CV, 2013 WL 1316694, at *2 (Tex. App.—Houston [14th Dist.] Apr. 2, 2013, pet. denied) (mem. op.) (citing *Murphy v. Countrywide Home Loans, Inc.*, 199 S.W.3d 441, 446–47 (Tex. App.—Houston [1st Dist.] 2006, pet. denied); *Stephens v. Williams*, No. 02-11-00376-CV, 2012 WL 3115826, at *1 (Tex. App.—Fort Worth Aug. 2, 2012, pet. denied) (mem. op.)).

Section 24.005 requires that when notice to vacate is given by mail, notice shall be given "to the premises in question." TEX. PROP. CODE ANN. § 24.005(f). While the statute does not require receipt by any particular person, notice must be either mailed or hand-delivered to a person

at the premises. *Id*.; *see also Trimble v. Fed. Nat'l Mortgage Ass'n*, 516 S.W.3d 24, 31 (Tex. App.—Houston [1st Dist.] 2016, pet. denied). For example, in *Trimble*, 516 S.W.3d at 31–32, the owner of the property in question mailed notice via both certified mail with return receipt requested and by first-class mail. The court decided that, in light of this evidence, the tenant's affidavit stating that he had never received notice was insufficient to raise a fact question to rebut the presumption that notice was properly delivered under Section 24.005(f). *Id*. at 31-32. Likewise, in *Schor v. U.S. Bank*, the court held that a business records affidavit, which stated that notice to vacate had been mailed via certified mail and "regular mail," along with copies of the notice to vacate presented at trial, constituted legally and factually sufficient evidence to satisfy the notice requirement under Section 24.005(f). *Schor v. U.S. Bank NA*, No. 07-17-00397-CV, 2018 WL 3799880, at *1, 3 (Tex. App.—Amarillo Aug. 9, 2018, no pet. h.) (mem. op.).

At trial, Bazan presented a document titled "Letter to Tenant for Eviction," dated April 20, 2010. While the letter appears to contain the mailing address of the property, it does not contain any evidence that it was mailed via certified or first-class mail. During her testimony, Bazan claimed that while she had not personally sent notice to vacate via mail or personal delivery, "[her] attorney took care of that." When Bazan then stated that her attorney's secretary had told her that the notice had been hand-delivered, Mendoza's attorney objected based on hearsay. The trial court sustained the objection. Later at trial, Mendoza admitted that he had received the notice to vacate and that he had knowledge that he was supposed to vacate the premises, but he did not state when he had received the notice.

Thus, we are faced with a situation in which the tenant does not dispute that he had received notice to vacate, but nothing in the record establishes that notice was properly delivered by mail

17

or by personal delivery. In prior cases, delivery of notice has been properly established by the presentation of witness testimony or an affidavit by someone with personal knowledge of the delivery, or by certified mail with return receipt requested or by first class mail. *See, e.g., Trimble*, 516 S.W.3d at 27, 31–32; *Schor*, 2018 WL 3799880, at *1, 3; *see also Khalilnia v. Fed. Home Loan Mortg. Corp.*, No. 01-12-00573-CV, 2013 WL 1183311, at *3 (Tex. App.—Houston [1st Dist.] Mar. 21, 2013, pet. denied) (mem. op.) (testimony by landlord's agent that she personally mailed the notice by certified mail was evidence of proper notice); *Mendez v. Remanente LLC*, No. 13-15-00529-CV, 2017 WL 1380529, at *6 (Tex. App.—Corpus Christi Feb. 2, 2017, no pet.) (mem. op.) (testimony by landlord that he personally handed the letter to tenant was factually sufficient evidence of notice). Here, the evidence Bazan presented that notice was given was (1) her testimony that "[her] attorney took care of that;" (2) a letter from Bazan's attorney demanding that the Mendozas bring the rent to be current or face eviction; and (3) Mendoza's admission that he had received the letter and knew that he and his wife were being asked to vacate the premises.

Unlike other cases in which the legal sufficiency of notice was raised as an issue on appeal, Bazan did not present testimony or an affidavit from either her attorney or his secretary who purportedly hand-delivered the notice, nor did she present any evidence that the notice was properly sent or delivered via certified or first-class mail. *See, e.g., Trimble*, 516 S.W.3d at 27, 31–32; *Schor*, 2018 WL 3799880, at *1, 3; *Khalilnia*, 2013 WL 1183311, at *3; *Mendez*, 2017 WL 1380529, at *6. Although this evidence is not present in the record before us, we nevertheless cannot ignore the fact that Mendoza did not dispute, either at trial or on appeal, that he had received notice to vacate or that he knew he was supposed to vacate the property. Instead, he complains on appeal about the lack of evidence establishing that the notice was sent at least three days prior

to the filing of Bazan's forcible detainer suit. Although we recognize that Mendoza did not testify regarding the specific date he received the notice to vacate, and Bazan did not present direct evidence of the date she either sent or hand-delivered the notice to vacate, we nonetheless hold that Mendoza's admission, along with the letter dated April 20, 2010, is sufficient evidence supporting an implied finding that Bazan sent the notice to vacate on or about April 20, 2010. *See Tseo*, 893 S.W.2d at 25 (citing *Roberson*, 768 S.W.2d at 281); *Anderson*, 31 S.W.3d at 430. Thus, we hold that legally sufficient evidence in the record supports an implied finding that Bazan complied with the three-day notice requirements set forth in Sections 24.002 and 24.005(f). Mendoza's eighth issue is overruled.

**Judgment for Unpaid Rent**

*Statute of Limitations and Sufficiency of Evidence*

We next discuss Mendoza's issues pertaining to the trial court's judgment for unpaid rent. In his fourth issue, Mendoza argues that the $10,000 award for unpaid rent should be vacated because the two-year statute of limitation period had expired by the time that Bazan filed her second forcible detainer suit. He also argues in his fifth issue that the evidence was insufficient to support the award for unpaid rent. We disagree.

TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a) states that a claimant must bring a suit for forcible detainer "not later than two years after the day the cause of action accrues." Nevertheless, a holdover tenant may be held liable for the rental value of the property during a holdover period. *See Alford v. Johnston*, 224 S.W.3d 291, 297 (Tex. App.—El Paso 2005, pet. denied). In an action for damages for a lessee's wrongful holdover, the proper measure of damages is the reasonable market rental value of the property during the holdover period. *Id*. (citing *Downwind Aviation,*

19

*Inc. v. Orange County*, 760 S.W.2d 336, 340 (Tex. App.—Beaumont 1988, writ denied); *Standard Container Corp. v. Dragon Realty*, 683 S.W.2d 45, 48 (Tex. App.—Dallas 1984, writ ref'd n.r.e.)).

Here, it is undisputed that Mendoza remained in possession of the property without Bazan's consent, and without paying rent, for several years after the expiration of the lease in 2010, as such, we find sufficient evidence supporting a finding that Mendoza was a holdover tenant, and more particularly, a tenant at sufferance. *See Alford*, 224 S.W.3d at 297; *see also Coinmach Corp. v. Aspenwood Apartment Corp.*, 417 S.W.3d 909, 915 (Tex. 2013) (a tenant at sufferance is "a [holdover] tenant who has been in lawful possession of property and wrongfully remains as a holdover after the tenant's interest has expired") (citations omitted). The lease between Bazan and the Mendozas established rent at $500 per month and stated that if the Mendozas defaulted on their obligations, Bazan, as landlord, would be entitled to "any other recovery to which Landlord is entitled by law or in equity." Further, the trial court awarded $10,000 in unpaid rent to Bazan, which constitutes less than two years' worth of the total rental obligation at $500 per month pursuant to the lease terms.

As such, while Bazan did not file her forcible detainer suit until longer than two years after the accrual of the cause of action, the trial court's award of $10,000 in unpaid rent was for a period of time less than the two-year statute of limitations.[3] We therefore hold that the award of unpaid rent for less than the value of two years' worth of rent was not barred by the two-year statute of limitations period, and is supported by sufficient evidence in the record. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(a); *Alford*, 224 S.W.3d at 297; *Downwind*, 760 S.W.3d at 340; *Standard Container Corp.*, 683 S.W.2d at 48. Mendoza's fourth and fifth issues are overruled.

---

[3] At a rate of $500 per month for a period of two years, such an amount would be $12,000.

20

*Party to the Lease*

Finally, we address Mendoza's seventh issue, in which he argues that the evidence was legally insufficient to support the award for unpaid rent because Mendoza was not a party to the lease agreement. Mendoza contends that the lease was not enforceable against him because he did not sign the agreement. Although his issue on appeal is framed as an insufficient evidence point, Mendoza essentially raises the statute of frauds as an affirmative defense.[4]

As a preliminary matter, we address Bazan's argument that Mendoza did not raise this argument in the trial court, and that his issue is therefore not preserved for our review. Since the primary function of pleadings is to notify the opposing party of one's claims and defenses, as well as the relief sought, a party cannot be granted relief unless such relief is supported by the party's pleadings. *See In re Park Memorial Condominium Ass'n, Inc.*, 322 S.W.3d 447, 450–51 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *Herrington v. Sandcastle Condo. Ass'n*, 222 S.W.3d 99, 102 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *Cunningham v. Parkdale Bank*, 660 S.W.2d 810, 813 (Tex. 1983)). As such, affirmative defenses to liability, such as statute of frauds, must be pleaded or else such argument is waived and unavailable for appellate review. *Kinnear v. Texas Com'n on Human Rights ex rel. Hale*, 14 S.W.3d 299, 300 (Tex. 2000) (citing *Davis v. City of San Antonio*, 752 S.W.2d 518, 519–20 (Tex. 1988)); *see also* TEX. R. CIV. P. 94 (listing statute of frauds as an affirmative defense which must be pleaded). Here, Mendoza's live pleadings showed that while he raised lack of notice, res judicata and collateral estoppel, fraud,

---

[4] Under the statute of frauds, "[a] promise or agreement [such as a lease of real estate for a term longer than one year] is not enforceable unless the promise or agreement . . . is (1) in writing[] and (2) signed by the person to be charged with the promise or agreement or by someone lawfully authorized to sign for him." TEX. BUS. & COM. CODE ANN. § 26.01(a).

and statute of limitations as affirmative defenses, he did not plead statute of frauds as an affirmative defense. As such, we hold that he has waived this argument. *See Kinnear*, 14 S.W.3d at 300; TEX. R. CIV. P. 94.

Even if Mendoza had not waived his argument, we find that the statute of frauds did not operate to invalidate the enforceability of the lease for lack of Mendoza's signature. As Bazan points out, the partial-performance exception to the statute of frauds operates to render lease terms enforceable against a non-signatory where the lessor fully performs by delivering possession of the premises and the lessee partly performs by paying rent. *See Stovall & Associates, P.C. v. Hibbs Fin. Ctr., Ltd.*, 409 S.W.3d 790, 800–01 (Tex. App.—Dallas 2013, no pet.) (landlord's delivery of possession of premises and tenant's payment of rent for a portion of the lease term removed the agreement from the statute of frauds); *Tinsley v. Metzler*, 44 S.W.2d 820, 822 (Tex. App.—El Paso 1931, writ dism'd w.o.j.) ("[W]here the tenant has gone into possession and paid rent, this is such part performance as takes the transaction out of the operation of the statute [of frauds] and renders it unavailable as a defense" in an action for unpaid rent.).

Here, it is undisputed that Bazan performed her obligations under the 2009–2010 lease by delivering possession of the property to the Mendozas. Likewise, Mendoza testified at trial that he occupied the property during the lease, and partially performed his obligations thereunder by paying monthly rent until some point in 2010. As such, we hold that although Mendoza is not a signatory to the lease, Bazan's full performance and Mendoza's partial performance under the lease renders that exception to the statute of frauds applicable here, and the statute of frauds does not preclude enforcement of the terms of lease against him. *See Stovall & Associates, P.C.*, 409 S.W.3d at 800–01; *Tinsley*, 44 S.W.2d at 822. Mendoza's seventh issue is overruled.

22

## CONCLUSION

Having overruled Mendoza's issues, we affirm the judgment below.

GINA M. PALAFOX, Justice

April 5, 2019

Before McClure, C.J., Rodriguez, and Palafox, JJ.