**Opinion issued February 28, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-21-00667-CV**

———————————

**MELINDA JACKSON, Appellant**

**V.**

**EUGENE ETHRIDGE, Appellee**

**On Appeal from the County Civil Court at Law No. 2**
**Harris County, Texas**
**Trial Court Case No. 1176269**

**MEMORANDUM OPINION**

In this forcible detainer case, Eugene Ethridge sought to evict Melinda

Jackson from a property that Ethridge owned in Houston. Jackson asserted a claim

for adverse possession, sought imposition of a constructive trust, and requested that

the county court at law transfer the case to district court because the issues of possession and title were intertwined. The county court declined to transfer the case and proceeded to trial. Ultimately, the county court signed a judgment finding that Ethridge had the superior right to possession of the property.

In one issue on appeal, Jackson contends that the county court lacked subject-matter jurisdiction over the case because the issues of possession and title were so intertwined that title to the property necessarily had to be determined before possession could be determined, but title disputes are within the exclusive jurisdiction of the district courts. We vacate the judgment of the county court and render judgment dismissing the forcible detainer action for want of jurisdiction.

**Background**

Eugene Ethridge and Melinda Jackson are half-siblings. In 1986, when Jackson was in high school, Ethridge purchased a parcel of residential property in Houston from Donald Harriss and his wife Marjory.[1] The deed referenced a promissory note, a vendor's lien, and a deed of trust. Ethridge testified that he gave permission for his mother, stepfather, and Jackson to live at the property. Ethridge's stepfather and mother lived there until their deaths in 2007 and 2017, respectively.

---

[1] At some point after the sale of the property to Ethridge, Donald Harriss passed away. Marjory Harriss remarried and changed her name to Marjory Fry. We refer to her as "Marjory" in this opinion.

After Ethridge's mother died, he allowed Jackson to live at the property. There is no evidence that Ethridge required his parents or Jackson to pay rent to him.

According to Ethridge, he paid a total of $40,000 in cash for the property. He did not "know anything about a debt service" on the property. He also did not know whether his parents paid "any debt service on the property" while they lived at the house or whether his parents made any payments to Marjory. Ethridge spoke to Marjory "once or twice" and told her that he wanted to allow his parents to live at the property.

Ethridge testified that from 2017 through 2020, he allowed Jackson to live at the property as long as she paid the property taxes. She refused to pay the 2020 property taxes, so Ethridge revoked his permission for Jackson to reside at the house. Ethridge acknowledged that Jackson eventually paid the 2020 property taxes, albeit two months late in March 2021. During the dispute over the property taxes, Ethridge requested that Jackson sign a lease agreement. He proposed that Jackson pay 1/12th of the estimated property taxes as monthly rent. Jackson refused to sign a lease. Ethridge sent Jackson a "notice to terminate tenancy" and a notice to vacate, and he ultimately initiated eviction proceedings in the justice court.

Jackson testified that she began living at the property with her parents in 1986. She was aware that, at the time Ethridge purchased the property, there was "debt service that was existing on the property." In Jackson's understanding, Ethridge

3

purchased the house in his name because their parents did not have good credit. After the purchase, Jackson's parents made monthly payments to Marjory that included "the mortgage, the insurance, everything, and the taxes." At some point after the death of Jackson's mother in 2017, Marjory informed Jackson that "the debt was free and clear, no more payments were expected." Jackson then notified Ethridge that the debt on the property had been paid off. Ethridge did not acknowledge this, but he demanded that Jackson pay the property taxes. Jackson testified that Ethridge did not pay cash for the house. He also had "known all along" that Jackson and her parents had made mortgage payments to Marjory.

Ethridge filed a complaint for forcible detainer in the justice court. In her answer, Jackson asserted that she owned the property by adverse possession. The justice court rendered judgment for Ethridge.

Jackson filed an appeal for a trial de novo before the county court at law. In the county court, Jackson filed an answer and counterclaims. Jackson again asserted a claim that she owned the property by adverse possession, alleging that her possession had been "actual, open, hostile, continuous, and exclusive since 2007." She also asserted claims for unjust enrichment and constructive fraud. Jackson alleged that Ethridge was in a confidential relationship with their parents and that he took title to the property in his name for the benefit of their parents. Jackson sought the imposition of a constructive trust.

Shortly before trial, Jackson filed a motion to transfer the case to district court. She argued that transfer was appropriate because she had asserted ownership of the property by adverse possession, but only district courts have jurisdiction to determine title disputes. Because title to the property had "become an integral part of the proceeding," the county court could not exercise jurisdiction over the case.

At the beginning of trial before the county court, Jackson argued that "the heart of the matter is for adverse possession and that that issue should be ruled on prior to making any determination on the forcible detainer." After Ethridge responded and argued that Jackson did not have a meritorious claim for adverse possession, the county court stated:

> Generally, I go forward. Generally I take the position that I go forward with the eviction to determine the superior right of possession unless another court has told me that there is a title issue and I need to stop. And so unless I'm ordered to abate my case while they determine title I go forward.

The court later stated, "I don't see this as an adverse possession claim because [Ethridge] knew [Jackson] was in there and so I just don't see it as an adverse possession claim. I'm going to go ahead and go forward."

Ethridge and Jackson were the only witnesses to testify at trial. Ultimately, the county court found that Ethridge has a superior right of possession and Jackson "has held over after her right to possession ended." This appeal followed.

5

**Subject-Matter Jurisdiction of County Courts**

In her sole issue, Jackson argues that the county court lacked subject-matter jurisdiction to render judgment on Ethridge's forcible detainer claim because the right to possession could not be adjudicated without first determining title to the property, an issue within the exclusive jurisdiction of the district courts.

**A.    *Standard of Review***

Subject-matter jurisdiction is essential to a court's power to decide a case. *City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553–54 (Tex. 2000). Subject-matter jurisdiction is never presumed, and it cannot be waived. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 443–44 (Tex. 1993). Whether a court has subject-matter jurisdiction is a question of law that we review de novo. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226, 228 (Tex. 2004).

**B.    *Jurisdiction Over Forcible Detainer Suits***

Texas law grants jurisdiction to the justice courts—and to the county courts on appeal by trial de novo—to determine eviction suits, which include forcible detainer suits. TEX. PROP. CODE § 24.004(a); *Chinyere v. Wells Fargo Bank, N.A.*, 440 S.W.3d 80, 82 (Tex. App.—Houston [1st Dist.] 2012, no pet.); *Gibson v. Dynegy Midstream Servs., L.P.*, 138 S.W.3d 518, 521–22 (Tex. App.—Fort Worth 2004, no pet.).

The justice courts and county courts lack jurisdiction to resolve title issues; rather, exclusive jurisdiction to determine title to real property is vested in the district courts. *Bynum v. Lewis*, 393 S.W.3d 916, 918 (Tex. App.—Tyler 2013, no pet.); *see Goodman-Delaney v. Grantham*, 484 S.W.3d 171, 174 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Neither the justice court nor the county court at law have subject matter jurisdiction to determine who has title to property."). The county court does not have jurisdiction over a forcible-detainer appeal unless the justice court had jurisdiction. *Hong Kong Dev., Inc. v. Nguyen*, 229 S.W.3d 415, 434 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (op. on reh'g); *Villalon v. Bank One*, 176 S.W.3d 66, 69 (Tex. App.—Houston [1st Dist.] 2004, pet. denied).

A forcible detainer action is "meant to be a speedy, simple, and inexpensive means of determining the right to possession of the premises." *Mendoza v. Bazan*, 574 S.W.3d 594, 602 (Tex. App.—El Paso 2019, pet. denied); *Rice v. Pinney*, 51 S.W.3d 705, 709 (Tex. App.—Dallas 2001, no pet.). To prevail in a forcible detainer action, the plaintiff is not required to prove title to the property. *Mendoza*, 574 S.W.3d at 602. Instead, he must only show sufficient evidence of ownership to demonstrate a superior right to immediate possession. *Id.*; TEX. R. CIV. P. 510.3(e) ("The court must adjudicate the right to actual possession and not title."); *see Marshall v. Hous. Auth. of City of San Antonio*, 198 S.W.3d 782, 785 (Tex. 2006) ("The only issue in a forcible detainer action is the right to actual possession of the

7

premises."); *Hong Kong Dev.*, 229 S.W.3d at 437 (noting that judgment of possession in forcible detainer action determines only right to "immediate possession," not "ultimate rights of the parties" to any other issue relating to property) (quotations omitted).

The "mere existence" of a title dispute concerning the property does not deprive a justice or county court of jurisdiction. *Mendoza*, 574 S.W.3d at 602; *Pinnacle Premier Props., Inc. v. Breton*, 447 S.W.3d 558, 563 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("If the title issue does not control the right to possession, it is of no moment."). Justice courts may adjudicate possession when issues related to title are tangentially or collaterally related to possession. *Gibson*, 138 S.W.3d at 522.

Instead, the justice and county courts lack jurisdiction only if the right to immediate possession "necessarily requires the resolution of a title dispute such that the issues of title and possession are necessarily intertwined."[2] *Mendoza*, 574

---

[2] As an example of a situation in which the issues of title and possession are not necessarily intertwined, courts have routinely held that justice and county courts have jurisdiction when a deed of trust expressly provides that, upon a foreclosure sale, the borrower becomes a tenant at sufferance and may be removed by the purchaser through forcible detainer proceedings. *See, e.g.*, *Morris v. Am. Home Mortg. Servicing, Inc.*, 360 S.W.3d 32, 35 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *Bruce v. Fed. Nat'l Mortg. Ass'n*, 352 S.W.3d 891, 893–94 (Tex. App.—Dallas 2011, pet. denied); *Dormady v. Dinero Land & Cattle Co.*, 61 S.W.3d 555, 558–59 (Tex. App.—San Antonio 2001, pet. dism'd w.o.j.). In such cases, the terms of the deed of trust itself create a landlord-tenant relationship between the borrower and the purchaser. *See Bruce*, 352 S.W.3d at 893. Even if the borrower argues wrongful foreclosure, the landlord-tenant relationship created in the deed of trust is

S.W.3d at 602 (quotations omitted); *Salaymeh v. Plaza Centro, LLC*, 264 S.W.3d 431, 435 (Tex. App.—Houston [14th Dist.] 2008, no pet.) (stating that justice court is deprived of jurisdiction "only if resolution of a title dispute is a prerequisite to determination of the right to immediate possession"). Specific evidence of a title dispute is required to raise an issue as to the justice court's and county court's jurisdiction. *Mendoza*, 574 S.W.3d at 602 (quotations omitted).

Courts have repeatedly held that claims of adverse possession raise a title dispute that is necessarily intertwined with issues of possession. *See, e.g.*, *Bynum*, 393 S.W.3d at 919; *Gibson*, 138 S.W.3d at 524; *Gentry v. Marburger*, 596 S.W.2d 201, 203 (Tex. App.—Houston [1st Dist.] 1980, writ ref'd n.r.e.); *Hernandez v. Martinez*, No. 04-19-00076-CV, 2019 WL 5580261, at *2 (Tex. App.—San Antonio Oct. 30, 2019, no pet.) (mem. op.); *Laird v. Savannah Bellaire Home Builders, Inc.*, No. 14-04-00128-CV, 2005 WL 2276963, at *2 (Tex. App.—Houston [14th Dist.] Aug. 23, 2005, no pet.) (mem. op.).

---

an independent basis for the justice or county courts to conclude that the purchaser has the right to immediate possession, and the courts are not *necessarily* required to determine the wrongful foreclosure question. *See Villalon v. Bank One*, 176 S.W.3d 66, 71 (Tex. App.—Houston [1st Dist.] 2004, pet. denied); *Dormady*, 61 S.W.3d at 559. The borrower is entitled to pursue their wrongful foreclosure claim—a title determination—in district court, but the justice and county courts have jurisdiction to determine the superior right of possession, which is the sole issue in forcible detainer actions. *See Villalon*, 176 S.W.3d at 71.

When a case presents issues concerning both title and possession, "the issues may be litigated in separate proceedings in different courts with appropriate jurisdiction." *Yarbrough v. Household Fin. Corp. III*, 455 S.W.3d 277, 280 (Tex. App.—Houston [14th Dist.] 2015, no pet.); *Salaymeh*, 264 S.W.3d at 435–36 (stating that forcible detainer actions are not exclusive, but are "cumulative of any other remedy that a party may have in the courts of this state"). A party who has been evicted in a forcible detainer action is entitled to bring a separate suit in the district court to determine title questions, and these suits may run concurrently.[3] *Salaymeh*, 264 S.W.3d at 436; *Hong Kong Dev.*, 229 S.W.3d at 437 (stating that forcible detainer suit in justice court may run concurrently with suit in another court "even if the other action adjudicates matters that could result in a different determination of possession from that rendered in the forcible-detainer suit").

## C.      *Whether Jackson Raised a Title Dispute*

At trial, the county court admitted a copy of the deed conveying the property from Donald Harriss to Ethridge in 1986. The "Warranty Deed With Vendor's Lien" states:

> That We, DONALD L. HARRISS and wife, MARJORY HARRISS
>
> of the County of Harris and State of Texas for and in consideration of the sum of TEN AND NO/100 DOLLARS and other valuable consideration to the undersigned paid by the grantee herein named, the

---

[3]      In his appellee's brief, Ethridge informs this Court that Jackson has filed suit in the Harris County district courts seeking a determination of title to the property.

receipt of which is hereby acknowledged, and the further consideration of the execution and delivery by Grantees of their certain promissory note of even date herewith, in the principal sum of Thirty Eight Thousand Seven Hundred Ninety One and No/100 Dollars ($38,791.00), payable to the order of Grantors in monthly installments and bearing interest as therein provided, containing the usual clauses providing for acceleration of maturity and for attorney's fees,

the payment of which note is secured by the vendor's lien herein retained, and is additionally secured by a deed of trust of even date herewith to JOHN H. TRUEHEART, JR. Trustee, have GRANTED, SOLD AND CONVEYED, and by these presents do GRANT, SELL AND CONVEY [the property] unto EUGENE B. ETHRIDGE . . . .

Ethridge testified that he purchased the property for $40,000 in cash, and he was not aware of any "debt service" on the property. He allowed his mother and stepfather to live on the property until their deaths, and he allowed Jackson to live on the property following their mother's death in 2017. No written lease agreement between Ethridge and his parents or between Ethridge and Jackson was entered into evidence. There was no testimony that Ethridge's parents or Jackson ever paid rent to Ethridge.

In 2020, a dispute arose between Ethridge and Jackson concerning the payment of property taxes. After Jackson initially refused to pay the property taxes, Ethridge revoked his permission allowing her to live at the property. He proposed that Jackson sign a written lease agreement requiring her to pay 1/12th of the estimated property taxes as monthly rent. Jackson refused to sign a lease. She eventually paid the 2020 property taxes in March 2021.

11

Ethridge testified that his mother and stepfather did not express an interest in purchasing the property in their names or without his financial assistance in 1986. Jackson, on the other hand, testified that Ethridge purchased the property in his name because their parents did not have good credit. On several occasions, Jackson's father attempted to refinance the property in his own name, but his credit was never good enough to obtain financing. According to Jackson, her parents paid monthly mortgage payments to Marjory, and they also paid property taxes and insurance payments. Jackson continued making these payments after her mother's death in 2017.

At some point, Marjory informed Jackson that their debt on the property had been fulfilled and no further payments were required. Jackson informed Ethridge and requested a deed to the property. Jackson stated, "[O]ver years we had been asking [Ethridge] to bring us the deed." Jackson also disputed Ethridge's testimony that he had paid cash for the property. She testified that Ethridge had "known all along we've been paying the mortgage to [Marjory]."

It is undisputed that Ethridge is the record title holder to the property. However, in both the justice court and the county court, Jackson alleged that she had obtained title to the property through adverse possession. In the county court, Jackson also alleged that Ethridge held title to the property in his name for the benefit of his mother and stepfather, but when Jackson paid off the mortgage on the

12

property, Ethridge "committed a constructive fraud when he claimed to be the owner of the property." She alleged that a constructive trust should be imposed so that Ethridge holds title to the property for the benefit of his mother's and stepfather's estates.

Adverse possession is an "actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person." TEX. CIV. PRAC. & REM. CODE § 16.021(1); *Bynum*, 393 S.W.3d at 918; *Masonic Bldg. Ass'n of Houston, Inc. v. McWhorter*, 177 S.W.3d 465, 472 (Tex. App.—Houston [1st Dist.] 2005, no pet.). "The concept of adverse possession allows a person to claim title to real property presently titled in another." *Bynum*, 393 S.W.3d at 918. To prevail on a claim of adverse possession, the claimant must establish, by a preponderance of the evidence, (1) the actual and visible possession of the disputed property; (2) that is adverse and hostile to the claim of the owner of record title; (3) that is open and notorious; (4) that is peaceable; (5) that is exclusive; and (6) that involves continuous cultivation, use, or enjoyment throughout the statutory period. *NAC Tex Hotel Co. v. Greak*, 481 S.W.3d 327, 331–32 (Tex. App.—Tyler 2015, no pet.).

A constructive trust is an equitable remedy that is implied by operation of law and that may be imposed by the trial court to prevent unjust enrichment. *Pickelner v. Adler*, 229 S.W.3d 516, 527 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

13

"[A] constructive trust generally involves primarily a presence of fraud, in view of which equitable title or interest should be recognized in some person other than the taker or holder of the legal title." *Mills v. Gray*, 210 S.W.2d 985, 988 (Tex. 1948) (quotations omitted); *Pickelner*, 229 S.W.3d at 527.

A constructive trust "escapes the unquestioned general rule that land titles must not rest in parol," so to establish a constructive trust, "there must be strict proof of a prior confidential relationship and unfair conduct or unjust enrichment on the part of the wrongdoer." *Pickelner*, 229 S.W.3d at 527 (quoting *Rankin v. Naftalis*, 557 S.W.2d 940, 944 (Tex. 1977)); *see Mills*, 210 S.W.2d at 989. The party seeking a constructive trust must establish: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property. *KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015). This remedy is premised on the "equitable notion that the acquisition or retention of the property is wrongful" and the possessor of the property would be unjustly enriched if they were allowed to retain the property. *Id.* at 88 (quotations omitted).

Jackson alleged that she had acquired title to the property through adverse possession or, alternatively, that a constructive trust should be imposed because Ethridge and their parents were in a confidential relationship and he acquired title to the property for their benefit. As we have noted above, several courts—including

14

this Court—have held that when a party asserts a claim of adverse possession, the party raises a title issue that is necessarily intertwined with the issue of possession and that deprives the justice and county courts of jurisdiction over the forcible detainer action. *See, e.g.*, *Bynum*, 393 S.W.3d at 919; *Gibson*, 138 S.W.3d at 524; *Gentry*, 596 S.W.2d at 203; *Hernandez*, 2019 WL 5580261, at \*2; *Laird*, 2005 WL 2276963, at \*2. Regardless of whether Jackson can ultimately prevail on these claims at trial,[4] she raised issues that made title to the property "an integral part of the proceeding." *See Bynum*, 393 S.W.3d at 919; *Gibson*, 138 S.W.3d at 524

---

[4] In her opening argument at trial, Jackson argued that she had acquired title to the property by adverse possession, and she requested that the county court rule on that issue prior to making any determination of Ethridge's forcible detainer action. Ethridge responded that he did not believe Jackson's adverse possession claim was meritorious. The trial court stated, "I don't see this as an adverse possession claim because [Ethridge] knew [Jackson] was in there and so I just don't see it as an adverse possession claim." Even if this claim is not meritorious, Jackson raised the issue of adverse possession in her pleadings and at trial, and the county court was required to make a determination on that claim—whether Jackson had acquired title to the property by adverse possession or not—before it could determine who had the superior right of possession. This is a title determination that can only be made by the district court. *See Bynum v. Lewis*, 393 S.W.3d 916, 919 (Tex. App.—Tyler 2013, no pet.); *Gibson v. Dynegy Midstream Servs., L.P.*, 138 S.W.3d 518, 524 (Tex. App.—Fort Worth 2004, no pet.). We note that the El Paso Court of Appeals has concluded that issues of title and possession to property were not necessarily intertwined even though the defendants argued adverse possession because the defendants undisputedly had not occupied the property for at least ten years, as required by statute. *See Mendoza v. Bazan*, 574 S.W.3d 594, 604 (Tex. App.—El Paso 2019, pet. denied); TEX. CIV. PRAC. & REM. CODE § 16.026(a). The El Paso Court distinguished *Gibson*, in which "the tenant pleaded a colorable adverse possession claim for the property," and concluded that the defendants' adverse possession claim did not constitute specific evidence of an intertwined title dispute. *Mendoza*, 574 S.W.3d at 604. The court also noted that "neither did [the defendants] claim in the lower courts to have title to the property on this basis." *Id.*

(concluding that "questions of title and possession" raised by defendant's adverse possession allegations "are so integrally linked" that justice and county courts could not have decided forcible detainer claims without deciding adverse possession claim).

To determine which party had the superior right of possession to the property, the county court necessarily had to resolve Jackson's adverse possession claim. *See Bynum*, 393 S.W.3d at 919; *Gibson*, 138 S.W.3d at 524. This is a title determination, over which the district courts have exclusive jurisdiction. *See Bynum*, 393 S.W.3d at 918; *see Goodman-Delaney*, 484 S.W.3d at 174. We conclude that, in this case, issues of title to the property and possession were "necessarily intertwined" such that the county court was required to resolve a title dispute before it could determine who had the superior right of possession to the property. We hold that the county court lacked jurisdiction to determine Ethridge's forcible detainer action.

We sustain Jackson's sole issue.

## Conclusion

We vacate the judgment of the county court and render judgment dismissing Ethridge's forcible detainer cause of action.

April L. Farris
Justice

Panel consists of Justices Goodman, Countiss, and Farris.

17